1   **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9   Jonathan Bialis, et al.,                         No. CV-23-00318-TUC-RM

10                  Plaintiffs,                       **ORDER**

11  v.

12  Catalina Foothills Unified School District
    No. 16, et al.,
13
                    Defendants.
14

15          On July 21, 2023, Plaintiff Z.B., by and through his parents Jonathan and Tiffanie

16  Bialis ("Mr. and Mrs. Bialis"), filed a First Amended Complaint ("FAC") against

17  Defendants Catalina Foothills Unified School District No. 16 ("CFUSD"), Dr. Mary

18  Kamerzell, Doug Huie, Dr. Erin Matyjasik, Denise Bartlett, and Dana Mulay.  (Doc. 4.)

19          Pending before the Court is Defendants' Partial Motion to Dismiss First Amended

20  Complaint (Doc. 6), to which Plaintiff responded (Doc. 8), and Defendants replied (Doc.

21  9).

22  **I.      First Amended Complaint**

23          Plaintiff alleges the following facts in his FAC.  Z.B. was previously enrolled as a

24  student at Ventana Vista Elementary School ("the School"), which is operated by

25  CFUSD.  (Doc. 4 at 3-4 ¶¶ 12, 25.)  Defendant Kamerzell was, at all relevant times,

26  CFUSD's Superintendent and highest-ranking employee.  (*Id.* at 2-3 ¶¶ 4, 17.)  Defendant

27  Huie was CFUSD's Interim Director of Facilities and Transportation.  (*Id.* at 2 ¶ 5.)

28  Defendant Matyjasik was CFUSD's Director of Special Services.  (*Id.* at 2 ¶ 6.)

1    Defendant Bartlett was CFUSD's Assistant Superintendent.  (*Id.* at 2 ¶ 7.)  Defendant
2    Mulay was the School's Principal.  (*Id.* at 2-3 ¶¶ 8, 19.)
3         Z.B. suffers from a rare knee condition that impacts his mobility and causes him
4    pain.  (*Id.* at 4 ¶ 26.)  On September 19, 2021, Mrs. Bialis emailed the School's principal,
5    Mulay, to inform her of Z.B.'s knee condition and of his need for a wheelchair.  (*Id.* at 4
6    ¶ 27.)  At the time, Z.B. attended classes on the School's second floor, and the elevator
7    was inoperable, so Mrs. Bialis was concerned that Z.B. would be unable to access the
8    second floor.  (*Id.* at 4 ¶¶ 22, 29.)  Mulay informed Mrs. Bialis that it would be best for
9    Z.B. to scoot on his bottom up and down the stairs.  (*Id.* at 4 ¶ 30.)  Mrs. Bialis then
10   emailed Matyjasik to report concerns about the inoperable elevator and Mulay's "butt
11   scoot" proposal.  (*Id.* at 5 ¶¶ 31-32.)  Matyjasik forwarded the email to Huie, but Huie
12   failed to take appropriate action to ensure the School was equally accessible to Z.B.  (*Id.*
13   at 5 ¶¶ 34-35.)  Z.B. "was openly mocked and ridiculed by his peers" for having to butt
14   scoot on the stairs, and butt scooting caused him to suffer humiliation and worsened knee
15   pain.  (*Id.* at 5 ¶¶ 37-38.)  Defendants were notified of these issues, but they failed to take
16   appropriate action.  (*Id.* at 5 ¶ 39.)
17        On September 24, 2021, Mulay informed the Bialises that Z.B. would be required
18   to attend classes taught on the second floor remotely from an empty classroom on the
19   first floor in order to avoid using the stairs.  (*Id.* at 5 ¶ 40.)  As a result, Z.B. was isolated
20   from his teachers and peers, causing loneliness and distress.  (*Id.* at 5 ¶ 41.)  Another
21   student briefly joined Z.B. in the isolated classroom, but after that student withdrew from
22   the school, Z.B.'s teacher denied his request for another student to join him in the
23   classroom.  (*Id.* at 5-6 ¶¶ 42-46.)  On September 30, 2021, Mr. Bialis reported to Mulay
24   that Z.B. felt isolated attending classes remotely and that his teacher failed to open virtual
25   meetings so he could participate in his classes.  (*Id.* at 6 ¶ 49.)  On the same day, the
26   Bialises emailed the president of CFUSD's Governing Board, who responded that the
27   Governing Board had approved an expenditure to repair the School's elevators but that
28   no estimated start or completion date could be provided.  (*Id.* at 6 ¶¶ 51-53.)  In October

2021, Z.B.'s doctor submitted a medical certification advising that Z.B.'s continued isolation from peers could lead to anxiety and depression, but CFUSD ignored the medical certification.  (*Id.* at 7 ¶¶ 56-57.)

In September 2021, the Bialises requested a 504 plan for Z.B. because his condition had been reclassified as a chronic episodic condition.  (*Id.* at 7 ¶ 58.)  CFUSD employees initially concluded, without a medical basis, that Z.B.'s condition was temporary and that Z.B. was not entitled to a 504 plan.  (*Id.* at 7 ¶¶ 59-60.)  After requiring extensive documentation, CFUSD changed its position and provided Z.B. a 504 plan in January 2022.  (*Id.* at 7-8 ¶¶ 63-67.)

On November 7, 2021, the School held a fire drill and another student had to assist Z.B. because the door to the playground had a high lip that made exiting in a wheelchair difficult.  (*Id.* at 8 ¶¶ 71-73.)  Z.B. suffered substantial distress because he could not confidently exit the building during an emergency.  (*Id.* at 8 ¶¶ 74-75.)  On November 10, 2021, Mrs. Bialis emailed Mulay to express concern regarding the fire drill experience and to request a plan to ensure Z.B. could safely exit the building in the event of an emergency.  (*Id.* at 8 ¶ 76.)  Mulay's response placed the onus on Z.B. to be "proactive" about his safety.  (*Id.* at 8-9 ¶¶ 77-78.)

Z.B. was diagnosed with depression, which he had never experienced before being placed in the isolated classroom.  (*Id.* at 8 ¶ 69.)  Even though the Bialises informed CFUSD of the diagnosis, CFUSD continued to ignore their concerns.  (*Id.* at 8 ¶ 70.)  On December 4, 2021, Mr. Bialis advised Mulay that remote instruction was not adequate and that Z.B. was struggling with feelings of isolation and depression.  (*Id.* at 9 ¶ 82.)  Mulay failed to adequately respond to the Bialises' concerns.  (*Id.* at 9 ¶ 83.)

On December 14, 2021, Mulay emailed Z.B.'s teachers to advise them that CFUSD had determined installing a chair lift was not feasible, and that "the elevator may not be repaired until the end of the school year."  (*Id.* at 9 ¶ 86.)  By that point, the elevator had been non-operational for nearly a year.  (*Id.* at 9 ¶ 87.)

The Bialises filed two complaints with the United States Department of

Education's Office for Civil Rights ("OCR"), the first in October 2021 and the second in February 2022. (*Id.* at 7, 10 ¶¶ 61, 90-91.)  On March 15, 2022, the OCR issued a report in response to the first OCR Complaint, determining that CFUSD had failed to make its facilities accessible to those with disabilities. (*Id.* at 10 ¶ 92.)  To avoid a formal finding of discrimination against disabled students, CFUSD entered into a Resolution Agreement requiring it to repair and/or replace the School's elevator and ensure that students with disabilities would have access to the School's field, lower playground, and adjacent facilities. (*Id.* at 10 ¶¶ 93-94.)  CFUSD did not timely comply with the requirements of the Resolution Agreement. (*Id.* at 10 ¶ 95.)

On March 18, 2022, Mr. Bialis emailed Mulay to report concerns regarding the inaccessibility of new equipment on the School's playground and field, and he reiterated that Z.B. had been excluded from activities. (*Id.* at 10-11 ¶¶ 96, 99.)  On April 26, 2022, the Bialises had to pick Z.B. up from the School before an event on the lower field because Z.B. was scared of being injured while attempting to get to the non-accessible field. (*Id.* at 12 ¶¶ 110-113.)

Throughout March 2022, the Bialises contacted numerous CFUSD representatives about Z.B.'s desire to participate in the Color Run—a race that was being held on School property and was not wheelchair accessible. (*Id.* at 11 ¶ 101.)

Also in March 2022, the Bialises complained to CFUSD that Z.B.'s peers were bullying him as a result of his disability. (*Id.* at 11 ¶ 102.)  CFUSD failed to adequately respond, and the bullying disrupted Z.B.'s education experience. (*Id.* at 11 ¶ 103.)  On April 27, 2022, the Bialises emailed several CFUSD representatives, including Mulay and Bartlett, to report that Z.B.'s peers were chastising him due to his disability and his inability to reach the second floor without butt scooting up the stairs. (*Id.* at 12 ¶ 116.)  CFUSD failed to remediate the issue or meaningfully respond. (*Id.* at 12 ¶ 117.)  On April 28, 2022, Z.B.'s teacher emailed Mulay about the ongoing harassment Z.B. was experiencing from his peers, and Kamerzell emailed Mulay advising her that she or Z.B.'s teachers should "intervene when this type of behavior is reported . . . [j]ust like

any other altercation between kids when they are making fun or speaking disrespectfully to another." (*Id.* at 12-13 ¶¶ 118-119.)  Mulay responded that "[n]othing was actually said directly to the child," despite knowing the statement was inaccurate.  (*Id.* at 13 ¶ 120.)

On April 26, 2022, Mr. Bialis emailed CFUSD's Governing Board to report that the School's bookfair was not wheelchair accessible.  (*Id.* at 11 ¶¶ 106-107.)  The Governing Board failed to respond.  (*Id.* at 12 ¶ 108.)  On April 28, 2022, Mr. Bialis emailed Kamerzell to follow up, but Kamerzell failed to respond.  (*Id.* at 13 ¶¶ 121-122.)

As a result of CFUSD's failure to accommodate Z.B.'s disability and make the School accessible to students with disabilities impacting their mobility, Z.B. suffered and continues to suffer severe emotional distress, and the Bialises were forced to enroll him in private school for the 2022-2023 school year.  (*Id.* at 13-14 ¶¶ 124-131.)

In Counts One, Two, and Four of the FAC, Plaintiff asserts claims against Defendant CFUSD for violation of the Americans with Disabilities Act ("ADA"), violation of the Rehabilitation Act, and intentional infliction of emotional distress.  (*Id.* at 14-16, 18-19 ¶¶ 134-159, 176-189.)  In Count Three, Plaintiff asserts a claim under 42 U.S.C. § 1983 against the individual Defendants—Kamerzell, Huie, Matyjasik, Bartlett, and Mulay—alleging that they discriminated against Z.B. on the basis of his disability in violation of the Equal Protection Clause of the Fourteenth Amendment.  (*Id.* at 16-18 ¶¶ 160-175.)  Specifically, Plaintiff alleges in Count Three that Defendants "failed to provide Z.B. equal access to the School's facilities/programs that was provided to students without disabilities impairing their mobility, subjected Z.B. to discriminatory conduct on the basis of his disability, and failed to remediate Z.B.'s hostile education environment." (*Id.* at 18 ¶ 170.)  Plaintiff further alleges that Defendants did not subject non-disabled students to the same discriminatory treatment and that there "was no rational relationship between the disparity of Defendants' treatment of Z.B. and a legitimate government purpose." (*Id.* at 18 ¶¶ 172-173.)  Plaintiff seeks compensatory, consequential, and punitive damages.  (*Id.* at 20.)

## II.     Standard of Review

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).   To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   While a complaint need not include "detailed factual allegations," it must contain more than labels, conclusions, "and a formulaic recitation of the elements of a cause of action." *Twombly*, 50 U.S. at 555.

In evaluating a Rule 12(b)(6) motion to dismiss, the court must take as true all well-pleaded factual allegations of the complaint and construe them in the light most favorable to the nonmovant.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, the court need not accept as true legal conclusions that are couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

## III.    Discussion

Defendants move to dismiss Count Three of the FAC, arguing that Plaintiff's allegations of bullying and failure to accommodate do not state an equal protection violation on which relief can be granted under 42 U.S.C. § 1983.  (Doc. 6.)  In response, Plaintiff argues that (1) Defendants failed to fully satisfy their meet-and-confer obligations under LRCiv 12.1(c); (2) the FAC states a viable equal protection claim by alleging that Defendants denied Plaintiff equal access to the School's programs and facilities and that there was no rational relationship between Defendants' treatment of Plaintiff and a legitimate government purpose; and (3) the FAC alleges a viable equal protection claim arising from the individual Defendants' deliberate indifference to the

peer-on-peer harassment experienced by Z.B.  (Doc. 8.)

### A.      Meet-and-Confer

Plaintiff argues that Defendants did not satisfy their meet-and-confer obligations under LRCiv 12.1(c) with respect to the argument that the FAC fails to allege Z.B. was treated differently from his peers and the argument related to the FAC's bullying allegations.  (Doc. 8 at 2, 8-10.)  Defendants aver that they met and conferred with Plaintiff on two separate occasions, notified Plaintiff of their intent to seek dismissal of Count Three in its entirety, and specifically noted the primary argument in their pending Motion to Dismiss.  (Doc. 9 at 6.)  Defendants note that Plaintiff never asserted during the meet-and-confer conversations that the FAC's bullying allegations were intended to be considered as a separate theory of liability for Count Three.  (*Id.*)  Defendants argue that the fact that they "included a catch-all argument if Plaintiff later asserted that the bullying allegations were intended to fall within" Count Three does not mean that Defendants' meet-and-confer efforts failed to satisfy LRCiv 12.1(c).  (*Id.*)  Defendants further argue that they actively took steps to remedy the alleged noncompliance with LRCiv 12.1(c), offering to discuss the bullying allegations, agree to an extension of Plaintiff's response deadline, or agree to a stipulated amendment if Plaintiff could explain how the amendment would cure the deficiencies in the FAC.  (*Id.*)

Local Rule of Civil Procedure 12.1(c) provides:

> No motion to dismiss for failure to state a claim or counterclaim, pursuant to Federal Rule of Civil Procedure 12(b)(6) . . . will be considered or decided unless the moving party includes a certification that, before filing the motion, the movant notified the opposing party of the issues asserted in the motion and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party.  The movant may comply with this rule through personal, telephonic, or written notice of the issues that it intends to assert in a motion.  A motion that does not contain the required certification may be stricken summarily.

Defendants included a LRCiv 12.1(c) certification with their Motion to Dismiss (Doc. 6 at 2), and there is no dispute that Defendants notified Plaintiff of their intention to move to dismiss Count Three and of the primary argument raised in the Motion to Dismiss.  Plaintiff's Response (Doc. 8), the exhibit attached thereto (Doc. 8-1), and

Defendants' Reply (Doc. 9) indicate that Defendants did not notify Plaintiff of all issues asserted in their Motion to Dismiss, such as the arguments concerning Plaintiff's bullying allegations.  However, given Defendants' substantial compliance with LRCiv 12.1(c), and given their attempts to remedy the situation after Plaintiff asserted non-compliance, the Court does not find grounds to strike or refuse to consider Defendants' Motion.

### B.    Equal Protection—Failure to Accommodate

Plaintiff's FAC alleges that, by failing to offer Z.B. acceptable accommodations for his disability, Defendants denied Z.B. equal access to classrooms and classes taught on the School's second floor, learning opportunities with his peers and teachers, recess and play activities, a safe way to exit the building in the event of an emergency, school facilities including the playground and fields, and school events including a race and bookfair.  (Doc. 4 at 4-13 ¶¶ 24, 40-41, 49-51, 54-55, 72-78, 82-83, 92-99, 101, 106-108, 110-113, and 124.)   Defendants concede that Plaintiff's FAC states claims for relief under the ADA and the Rehabilitation Act, but they argue that Plaintiff's allegations of failure to accommodate his disability and provide accessible facilities do not, without more, implicate equal protection concerns.  (Doc. 6 at 7-10; Doc. 9 at 6-9.)   Plaintiff asserts that the FAC states a viable equal protection claim because it alleges that Z.B. was disabled, that the individual Defendants denied him equal access to the School's facilities and programs, and that there was no rational relationship between the individual Defendants' treatment of Z.B. and a legitimate government purpose.  (Doc. 8 at 11-16.)

The Ninth Circuit has held that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."  *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).  Here, however—unlike in *Vinson*—Plaintiff's § 1983 claim is not explicitly premised on violations of the ADA or Rehabilitation Act; rather, the claim is premised on an alleged violation of the Equal Protection Clause of the Fourteenth Amendment.  The Court assumes, without deciding, that neither the ADA nor the Rehabilitation Act preclude a plaintiff from asserting an equal protection claim for

disability discrimination under § 1983.  *See Bullington v. Bedford Cnty., Tn.*, 905 F.3d 467, 478 (6th Cir. 2018) (holding ADA does not preclude a plaintiff from asserting an equal protection claim for disability discrimination under § 1983).

The Equal Protection Clause of the Fourteenth Amendment requires states to treat all similarly situated persons alike.  *Plyler v. Doe*, 457 U.S. 202, 216 (1982).  When a classification "disadvantage[s] a suspect class" or "impinge[s] upon the exercise of a fundamental right," a state must demonstrate that the classification "has been precisely tailored to serve a compelling governmental interest."  *Id.* at 216–17 (internal quotation marks omitted).  When neither a suspect class nor a fundamental right is at issue, a state's classification accords with the Equal Protection Clause so long as "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."  *Heller v. Doe*, 509 U.S. 312, 319–20 (1993).

The disabled are not a suspect class for equal protection purposes, and education—despite its importance—is not a fundamental right.  *Plyler*, 457 U.S. at 223 (education not a fundamental right); *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (disabled not a suspect class).  Accordingly, in order to state an equal protection claim, Plaintiff must show that Defendants' actions lacked "a rational relationship to a legitimate governmental purpose."  *Tennessee v. Lane*, 541 U.S. 509, 522 (2004).  To meet this burden, Plaintiff must "negative 'any reasonably conceivable state of facts that could provide a rational basis for the'" actions.  *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) (quoting *Heller*, 509 U.S. at 320).

It is unclear whether failure to make special accommodations for the disabled can ever violate the Equal Protection Clause of the Fourteenth Amendment.  The United States Supreme Court has stated that "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational," and that "[i]f special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause."  *Garrett*, 531 U.S. at 367–68.  This Court assumes, without

deciding, that a state's irrational failure to provide special accommodations for the disabled may violate the Equal Protection Clause, and thus that it is possible to state an equal protection claim premised on failure to accommodate disability.  However, even if stating such a claim is possible, it is exceedingly difficult—as evidenced by the scarcity of caselaw addressing such claims.

The first difficulty in stating such a claim is the requirement that a plaintiff asserting an equal protection claim show that a government actor treated him "differently from similarly situated individuals." *Gonzalez-Medina v. Holder*, 641 F.3d 333, 336 (9th Cir. 2011).  Groups of individuals are similarly situated when their circumstances are "in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  The "similarly situated" analysis "focus[es] on factors of similarity and distinction pertinent" to the government action at issue. *Arizona Dream Act Coalition v. Brewer*, 855 F.3d 957, 967 (9th Cir. 2017).  Here, the factual allegations of the FAC establish that Z.B. is not similarly situated to non-mobility-impaired students in all relevant respects, because non-mobility-impaired students can access the second floor and other school facilities without special accommodations, and Z.B. cannot.  *Compare More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993) (finding disabled prisoners similarly situated to non-disabled prisoners with respect to in-cell cable television service because prison officials "would not have to provide any special assistance" for disabled prisoners to watch television in their cells).

The second difficulty in stating a § 1983 equal protection claim premised on failure to accommodate disability lies in the requirement that a plaintiff bears the burden of negating "any reasonably conceivable state of facts that could provide a rational basis" for the government actor's differential treatment.  *Garrett*, 531 U.S. at 367 (internal quotation marks omitted).  Plaintiff alleges in the FAC that "[t]here was no rational relationship between the disparity of Defendants' treatment of Z.B. and a legitimate government purpose."  (Doc. 4 at 18 ¶ 173.)  However, this is a legal conclusion that need not be taken as true in evaluating Defendants' Motion to Dismiss.  *See Iqbal*, 556 U.S. at 678.  Rational bases for Defendants' actions—including the expense and time

1   required to repair the School's elevator and otherwise render the school accessible to

2   wheelchair-bound students—are apparent from the face of the FAC.  *See Toledo v.*

3   *Sanchez*, 454 F.3d 24, 33–34 (1st Cir. 2006) (plaintiff failed to show school had no

4   rational bases for its alleged failure to accommodate his disability where the school's

5   actions were rationally related to "budgetary constraints"); *see also Lee v. City of Los*

6   *Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (for purposes of equal protection claim, it is

7   insufficient for a plaintiff to allege that the defendants "knowingly or with deliberate

8   indifference to the rights of the . . . disabled adopted facially neutral policies of inaction

9   that have had a discriminatory impact on disabled persons").

10          As conceded by Defendants, the allegations of the FAC implicate the ADA and

11   Section 504 of the Rehabilitation Act.  They do not, however, state a § 1983 claim on

12   which relief can be granted for failure to accommodate disability in violation of the Equal

13   Protection Clause.  The Court will dismiss Count Three to the extent it alleges failure to

14   provide equal access to school facilities and programs.

15          **C.     Equal Protection—Hostile Education Environment**

16          Plaintiff also alleges in Count Three of the FAC that the individual Defendants

17   "failed to remediate Z.B.'s hostile education environment."  (Doc. 4 at 18 ¶ 170.)

18   Defendants argue that Plaintiff's bullying allegations fail to state a viable equal protection

19   claim because Plaintiff does not allege that any of the individual Defendants treated him

20   differently from other students on the basis of his disability.  (Doc. 6 at 10-11.)

21   Defendants further note that Plaintiff does not allege that Defendant Matyjasik or

22   Defendant Huie had any involvement with the Bialises' reports of bullying.  (*Id.* at 10.)

23   Plaintiff argues in response that the FAC states a viable claim arising from the individual

24   Defendants' deliberate indifference to the peer-on-peer harassment experienced by Z.B.

25   because it alleges all Defendants were aware that Z.B.'s peers were bullying him as a

26   result of his disability, and all were deliberately indifferent.  (Doc. 8 at 16-18.)  Plaintiff

27   contends that he need not allege that each individual Defendant had direct involvement

28   with the situation in order to state a viable § 1983 claim.  (*Id.* at 17.)

A public school official may violate the Equal Protection Clause by treating a student's complaints of harassment differently from other complaints of harassment.  *See Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1135 (9th Cir. 2003).  To succeed on such a claim, a plaintiff must show that the defendant either "intentionally discriminated" or that the defendant "acted with deliberate indifference" by "'respond[ing] to known peer harassment in a manner that is . . . clearly unreasonable.'" *Id.* (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649 (1999)).  To state a § 1983 claim, a plaintiff must plead that each government-official defendant, through the official's own actions, violated the Constitution; vicarious liability is inapplicable.  *Iqbal*, 556 U.S. at 676.

Here, Plaintiff has failed to adequately plead that Defendants Matyjasik and Huie unreasonably responded to known peer harassment.  The FAC's allegations that the Bialises complained of peer harassment to CFUSD or unnamed CFUSD officials, and the vague allegation that "Defendants were notified" of bullying issues and failed to take appropriate action, are insufficient to state a plausible claim that Matyjasik and Huie were notified that Z.B. was being harassed by his peers and that they responded in a clearly unreasonable manner.  (*See* Doc. 4 at 5, 11 ¶¶ 39, 102-103.)  Furthermore, the FAC's allegation that Kamerzell told Mulay to intervene when harassing behavior was reported is insufficient to show that Kamerzell responded to known peer harassment in a manner that is clearly unreasonable.  (*See id.* at 12-13 ¶ 119.)  Finally, the FAC's allegation that the Bialises emailed Bartlett to report that Z.B.'s peers were chastising him due to his disability and that "the District failed to remediate th[e] issue or otherwise meaningfully respond" is too vague to show that Bartlett unreasonably responded to known peer harassment.  (*See id.* at 12 ¶¶ 116-117.)  Accordingly, the Court will dismiss Defendants Matyjasik, Huie, Kamerzell, and Bartlett to the extent the FAC alleges they violated the Equal Protection Clause through deliberate indifference to known peer harassment.

However, the Court finds that the FAC states a § 1983 equal protection claim against Mulay premised on deliberate indifference to known peer harassment.  Plaintiff

alleges that Z.B. was openly mocked and ridiculed by his peers due to his disability and due to Mulay's proposal that he "butt scoot" up and down the stairs.  (Doc. 4 at 5 ¶¶ 37-38.)  Plaintiff further alleges that Mulay was notified by both the Bialises and Z.B.'s teacher of the ongoing peer harassment experienced by Z.B.  (*Id.* at 5, 12 ¶¶ 39, 116, 118.)  Despite being on notice of the harassment, when Mulay was told by Kamerzell to intervene in the same manner that school officials would respond to any other type of harassment, Mulay falsely reported that nothing was actually said to Z.B.  (*Id.* at 12-13 ¶¶ 116-120.)  Taking these allegations as true, Plaintiff has plausibly alleged that Mulay responded unreasonably to known peer harassment.

### D.     Leave to Amend

Plaintiff requests leave to amend the FAC if the Court is persuaded by any of Defendants' arguments.  (Doc. 8 at 18.)  Defendants argue that this Court should dismiss without leave to amend because Plaintiff has failed to cure the deficiencies with Count Three despite a previous amendment, and because any amendment attempting to raise an equal protection claim would be futile.  (Doc. 9 at 11.)

It is possible that Plaintiff could state a viable equal protection claim against the individual Defendants through the allegation of other facts.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment.").  Furthermore, Defendants' failure to notify Plaintiff of all issues raised in their pending Motion to Dismiss during the parties' meet-and-confer discussions provides further justification for allowing amendment.   Accordingly, the Court will grant leave to amend.

**IT IS ORDERED** that Defendants' Partial Motion to Dismiss (Doc. 6) is **granted in part and denied in part**.  The Motion is **denied** to the extent it seeks dismissal of the portion of Count Three asserting a 42 U.S.C. § 1983 claim against Defendant Dana Mulay premised on deliberate indifference to known peer harassment in violation of the Equal Protection Clause.  The Motion is otherwise **granted**.

1      **IT IS FURTHER ORDERED** that Count Three of the First Amended Complaint

2 is **dismissed without prejudice** to the extent that (1) it asserts that Defendants violated

3 the Equal Protection Clause by failing to make the Ventana Vista Elementary School's

4 facilities and programs equally accessible to Z.B; and (2) to the extent it alleges that

5 Defendants Erin Matyjasik, Doug Huie, Mary Kamerzel, and Denise Bartlett were

6 deliberately indifferent to known peer harassment of Z.B.  Defendants Matyjasik, Huie,

7 Kamerzel, and Bartlett are **dismissed without prejudice**.

8      **IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint

9 curing the deficiencies addressed in this Order within **thirty (30) days** of the date this

10 Order is filed.  If Plaintiff fails to timely file an amended complaint, this case will

11 proceed on Counts One, Two, and Four of the FAC asserted against Defendant Catalina

12 Foothills Unified School District No. 16, and on the portion of Count Three of the FAC

13 asserted against Defendant Dana Mulay alleging deliberate indifference to known peer

14 harassment in violation of the Equal Protection Clause of the Fourteenth Amendment.

15      Dated this 7th day of December, 2023.

16

17

18

19                             _____

20                            Honorable Rosemary Márquez
                              United States District Judge

21

22

23

24

25

26

27

28